### GLASER *v*. FIRST NATIONAL BANK.

Opinion delivered March 21, 1896.

ATTACHMENT—INTERVENTION BY JUNIOR ATTACHER.—An attachment creditor cannot have a prior attachment set aside because it was without legal grounds, and was based on an affidavit known to be false by both parties to the action in which it was filed, and was procured for the purpose of obtaining a preference, and permitted by the debtor for that purpose while in failing circumstances.

FRAUD—MISREPRESENTATION.—The fact that one creditor falsely informs another that their debtor is solvent, and that he does not intend to press his claim against him, though made for the purpose of obtaining precedence over the latter creditor, will not constitute ground for postponing the former's attachment lien to that of the latter.

Appeal from Sebastian Circuit Court, Fort Smith District.

EDGAR E. BRYANT, Judge.

The First National Bank of Fort Smith sued the firm of C. Tilles & Co., and caused their property to be attached. Glaser Brothers, and other creditors of C. Tilles & Co., subsequently brought suits against the latter, and caused attachments to be sued out and levied on the same property. Thereupon they intervened in the first-named suit, seeking to invalidate the bank's prior attachment upon grounds set out in the opinion. Judgment below was against the interveners, and they have appealed. The facts sufficiently appear in the opinion.

*Joseph M. Hill,* and *Clendening, Mechem & Youmans,* for appellants.

1. An attachment, known both to the creditor and debtor to be without grounds, and brought for the purpose of obtaining a preference, and suffered by the debtor with the intention to thereby give such creditor a preference, is fraudulent, and should be postponed to a junior attaching creditor who intervenes in such suit. This statement involves two propositions, viz: (*a*) A junior attacher can intervene in a senior attachment, and claim the attached property, or proceeds thereof, over such senior attaching creditor, upon a showing that the senior attachment is fraudulent and collusive. Sand. & H. Dig., sec. 372: 57 Ark. 541; 47 *id.* 31; 53 *id.* 140. (*b*) An attachment, based upon a false affidavit and known to be false by affiant and defendant, but brought with

the purpose of obtaining a preference against a failing merchant, and suffered to be brought ·by such failing merchant, and suffered to be sustained with the intention thereby to give such creditor a preference over other creditors, is fraudulent as to such intervening junior attaching creditors. 74 Tex. 589, S. C. 12 S. W. 235; 11 *id.* 1123; 19 *id.* 791; 8 So. 264; 11 So. 220; 15 S. E. 950; 12 S. W. 508. The latter case sustains appellee's theory.

2. The bank is estopped to claim priority over Rice, Stix & Co. and Bamberger, Bloom & Co., by reason of its false representations to them. 33 Ark. 465.

*George H. Sanders* also for appellants.

1. A senior attachment when issued without any grounds for it, is not good against a junior attachment issued, served and sustained, and confessedly good and unchallenged. 57 Ark. 541; 58 *id.* 255; Waples, Att. (Ed. 1895) sec. 775; Drake, Att., sec. 274; Wade, Att., sec. 54; Vanfleet, Collateral Attack, p. 583; 65 Tex. 266; 62 *id.* 328; 4 Rich. (S. C.) 561; 4 N. H. 513; 14 *id.* 129; 13 Cal. 435; 18 Cal. 378; 36 Ind. 361; 85 N. Y. 243; 3 Mich. 531.

2. A preference of a creditor cannot be made by attachment without grounds, where other creditors follow, and writs are levied on the same property. Burrill, Assignments, sec. 125; Black, Judgments, sec. 323; Pom. Eq. sec. 886.

3. The bank was guilty of fraud on Rice, Stix & Co. and Bamberger, Bloom & Co. just previous to the attachment, and is estopped by its false and fraudulent representations, to their injury. 66 Wis. 292; Suth. on Dam., vol. 3., p. 587; 28 Fed. 788.

*Clayton & Brizzolara, James F. Read* and *Jno. H. Rogers*, for appellee.

1.   All the questions of fact raised by the petition in this case were found against appellants. It must then be taken as true that (*a*) the bank's judgment was for a *bona fide* debt; (*b*) that its attachment was regular, and prior in time to appellants;' and (*c*), it not appearing on what grounds the bank's attachment was sued out, it must be assumed that it was correctly sustained. It was not a fraud for Tilles & Co. to consent or even procure the bank to attach them, for the purpose only of preferring the bank as to a *bona fide* debt. This preference could be made by assignment, mortgage, pledge, or sale, and why not by attachment, if made for no other purpose than to prefer the bank for a just debt? 52 Ark. 40, 41; 53 Ark. 538; 24 Pick. 191. It was neither fraud nor collusion. 45 Barb. (N. Y.) 369; 28 Md. 235; 1 Story, Eq. Jur., sec. 187.

2.   A junior attaching creditor cannot attack the validity of a prior attachment where the debt is *bona fide*, because of irregularity in the attachment proceedings, nor because of the non-existence of any valid ground of attachment, nor because the debtor instigated the prior attachment. 47 Ark. 41, recently followed in U. S. Ct. Ct. App. in *Rice, Stix & Co.* v. *Adler-Goldman & Co;* Sand. & H. Dig., sec. 372; 53 Ark. 140; 57 *id.* 542; 2 So. Rep. 168; 34 N. W. 229; 24 Pick. 198; 46 N. W. 910; 58 Ark. 527; 60 *id.* 444; 99 Am. Dec. 719.

3.   In law the bank was not required to answer or disclose anything; and if it did speak and deceive Fields, it had the right to do so, if done in order to protect itself only, and not to wrong Rice, Stix & Co. 19 Vt. 292. But appellants were not injured by these representations, and the doctrine of estoppel has no application. 33 Ark. 465.

Right of junior attacher to intervene in senior attachment.

BATTLE, J.   When two creditors have sued out orders of attachment against a debtor, and caused them to be levied on the same property, has the junior the

right to file a complaint in the action instituted by the senior, thereby claiming the first lien, and to have the first attachment set aside by showing that it was known at the commencement thereof by both parties to the same to be without legal grounds, that it was based on an affidavit known to be false by both parties to the action in which it was filed, that it was made for the purpose of obtaining a preference over creditors, and that it was permitted by the debtor for that purpose, he and the first attachment creditor knowing at the time that he was in failing circumstances?

No creditor has the right to defend an action or proceeding against his debtor, to which he is not a party, on the ground that, if the suit or proceeding is maintained, he will not be able to recover the whole of his debt. Having no right to interpose a defense in such an action, he could not, for the same reason, have a judgment rendered therein set aside by a motion or other original proceeding at law or in equity, ''on the ground that the defendant had defenses which he might have asserted, or that, in the transaction between the plaintiff and the defendant out of which the judgment grew, the former overreached the latter.''* But if he is injuriously affected by the judgment, he may obtain relief by showing that it was procured by fraud and collusion, or suffered for the purpose of hindering, delaying or defrauding the creditors of the defendant.†

It has been held that he is entitled to relief against judgments by confession or default against his insolvent debtors for amounts larger than were actually due the

---

*Mayes* v. *Woodall*, 35 Texas, 687; *Drexel's Appeal*, 6 Pa. St. 272; *Hauer's Appeal*, 5 Watts & Serg. 473; *Packard* v. *Smith*, 9 Wis. 184; 1 Black on Judgments, sec. 317, and cases cited.

†*Meckley's Appeal*, 102 Pa. St. 536; *Dougherty's Estate*, 9 Watts & Serg. 189; *Thompson's Appeal*, 57 Pa. St. 175; *McAlpine* v. *Sweetser*, 76 Ind. 78; *Sidensparker* v. *Sidensparker*, 52 Me. 481.

plaintiffs, on the ground they are fraudulent and void as to creditors.* So it has been held that he is entitled to relief against a judgment which is not founded on an actual debt, or other legal liability, in existence at the time of its entry, and was suffered by the defendant on the ground that it is invalid against the creditors of the judgment debtor.† But if the judgment be only constructively fraudulent, like mortgages, in like manner affected, it may stand good in equity for what is actually due.‡

The interference of creditors in attachment proceedings is controlled by the same rule. A junior attaching creditor cannot take advantage of irregularities or informalities in the proceedings in a prior attachment, though constituting good grounds for setting aside the attachment on the motion of the defendant. The reason for this is, "priority is in the gift of the debtor;" and when it is obtained from him by means of an irregular or informal attachment, with which both parties to the same are content, no one has room to complain of it. "The formality and regularity of such proceedings, the rightful issuing the attachment, in the absence of fraud and collusion between the plaintiffs and defendants, are matters pertaining exclusively to the defendants." *Bona fide* advantages obtained thereby by one creditor over the others, which entitle him to the satisfaction of his claim out of the debtor's property in preference to and before the remaining creditors, are sustained by the law, although by such payment the collection of other debts will be defeated. But if, in obtaining such advantages,

---

*Peirce v. Partridge,* 3 Met. (Mass.) 44 ; *Palmer* v. *Martindell,* 43 N. J. Eq. 90 ; *Dickinson* v. *Way,* 3 Rich. Eq. 412.

†*Palmer* v. *Martindell,* 43 N. J. Eq. 90; *Taaffe* v. *Josephson,* 7 Cal. 352; *Ayres* v. *Husted,* 15 Conn. 504 ; 2 Bigelow, Fraud, p. 132.

‡*Parker* v. *Holmes,* 2 Hill, Ch. 95 ; *Ayres* v. *Husted,* 15 Conn. 504; *Davenport* v. *Wright,* 51 Pa. St. 292.

there is any collusion between the debtor and creditor for the purpose of hindering, delaying, or defrauding other creditors, their rights are thereby affected, and they have the right to interfere in the disposition of the property attached for the purpose of asserting and protecting them.*

Attachments levied in proceedings instituted by debtors against themselves in behalf of certain creditors, and ratified by such creditors, in the absence of fraud, have been sustained by courts.†

In *First Nat. Bank* v. *Greenwood* (Wis.), 45 N. W. Rep. 810, which was a contest between creditors over a fund held by an attachment, the court said: "The existence of the alleged grounds for the attachment cannot be controverted by the bank. The right to do so is given to the attachment debtors alone, and it is entirely competent for them to abstain from interposing traverses, or to waive the same after they have been interposed, as was done in all the attachment suits."

In *First Nat. Bank* v. *Cochran* (Miss.), 14 Southern Rep. 439, creditors intervening under a statute of Mississippi sought to set aside an attachment for fraud. Judge Cooper, in delivering the opinion of the court, said: "During the investigation it was made to appear that the plaintiffs in the attachment had paid to the defendants, or to their attorneys for them, $300 in cash, in consideration of the withdrawal by the defendants of the plea traversing the grounds upon which the attachment was sued out. The interpleaders thereupon asked to be permitted to so amend their petition as to charge that:

---

*Meinhard* v. *Youngblood*, (S. C.) 15 S. E. Rep. 950 ; *Gilkerson-Sloss Commission Co.* v. *Bond*, (La.) 11 Southern Rep. 220 ; *Claflin* v. *Sylvester*, (Mo.) 12 S. W. Rep. 508.

†*First National Bank of Madison* v. *Greenwood* (Wis.), 45 N. W. Rep. 810; *Bayley* v. *Bryant*, 24 Pick. 198; *Hardware Co.* v. *Deere, Mansur & Co.* 53 Ark. 140.

the attachment had been sued out by collusion between the plaintiffs and defendants. The court refused to permit this to be done, and this is assigned for error. The action of the court in this respect was correct. The fact that the plaintiffs, after the institution of their suit, found themselves unable to maintain the truth of the averments upon which the attachment was sued out, and thereupon paid the defendants not to interpose or to withdraw their plea putting in issue the said grounds of attachment, does not suggest that it had been sued out by collusion with the defendants. On the contrary, it suggests that the defendants were thriftily making profit of their advantage over their creditors by converting into concrete cash the abstract rights of defending the suits brought against them."

But it has been held that subsequent attaching creditors are entitled to relief against attachments based on demands not due, when there is no statute authorizing it, or on one which has no existence, or on one for which an attachment could not lawfully issue, they being fraudulent and void as to such creditors.* And in *Peirce* v. *Partridge*, 3 Met. (Mass.) 44, it was held that "where a debtor submits to judgment by default, and the creditor (intentionally) takes judgment for the whole claim in suit, without deducting therefrom the amount of articles received by him from the debtor in part payment of such claim, the judgment is void *in toto* as against other attaching creditors of the same debtor." See Drake, Attachments (7th Ed.), secs. 273-275.

As to the manner in which subsequent attaching creditors may assert their rights in this state, a statute upon this subject says: "Any person may, before the sale of any attached property, or before the payment to the

---

*Taaffe* v. *Josephson*, 7 Cal. 352; *Walker* v. *Roberts*, 4 Rich. Law, 561; *Palmer* v. *Martindell*, 43 N. J. Eq. 90.

plaintiff of the proceeds thereof, or of any attached debt, present his complaint, verified by oath, to the court, *disputing the validity of the attachment*, or stating a claim to the property, or an interest in or lien on it under any other attachment, or otherwise, and setting forth the facts upon which such claim is founded, and his claim shall be investigated." Sand. & H. Dig. sec. 372.

The construction of this statute has been so far in harmony with the law as held in the cases we have cited. In construing it in *Sannoner* v. *Jacobson*, 47 Ark. 31, Chief Justice Cockrill, speaking for the court, said : "The object of letting the second attacher into the suit of the first is declared * * to be to enable him to procure 'such order as may be necessary to protect his rights.' No new right is conferred upon him by the statute, but only a privilege granted of availing himself of the new and expeditious remedy provided for the protection of whatever right he may have acquired by suing out his attachment. It cannot with propriety be contended that the intervener is let in for the purpose of defending the suit, and disputing the grounds of attachment in lieu of the defendant, although that might be an efficacious method of invalidating the attachment. That would involve the practice in manifold difficulties, and even in legal absurdities, without any nearer approach to substantial justice. Such a practice prevailed at an early day in Massachusetts under a statute expressly conferring upon the intervener the right to defend for the defendant, whether the latter desired it or not; but it was abolished a long time ago, after condemnation by the courts in severe terms. *Baird* v. *Williams*, 19 Pick. 381."

In *Hardware Company* v. *Deere, Mansur & Co.*, 53 Ark. 140, an order of attachment was sued out without the knowledge of the plaintiff. After this, another

creditor sued out a second order against the same debtor, and caused it to be levied on the same property as the first, before he knew the first action had been brought in his name. Thereupon the creditor who instituted the second suit claimed the prior lien, and the court sustained his contention, and held that the first attachment was of no effect until the plaintiff in it ratified it, when it became second in priority. *Sannoner* v. *Jacobson*, *supra*, was cited to sustain the priority of the first; but the court said that the objection urged against it did not go to the grounds of it or the irregularities of the proceeding, but denied the validity of the attachment, and attacked the groundwork of the lien.

In *Rice* v. *Dorrian*, 57 Ark. 541, an indorser on seven promissory notes commenced suit against the maker of the notes, and sued out an order of attachment for the purpose of securing for himself indemnity, and caused the property of the defendant to be attached. Creditors of the maker subsequently brought suit against him, and caused the same property to be attached; and afterwards, by complaint filed in the first suit, denied the the validity of the indorser's attachment, and asked that their claim be first satisfied. This court held that the junior attacher had the right to dispute the validity of the first attachment, and to establish the right of his own to precedence, by showing that the first existed without the authority of law.

According to the rule we have stated, which has been followed by this court, a junior attaching creditor cannot controvert the existence of the grounds of a prior attachment. As was said in *First Nat. Bank* v. *Greenwood*, *supra*, "the right to do so is given to the attachment debtors alone, and it is entirely competent for them to abstain from interposing traverses, or to waive the same after they have been interposed." The statute expressly provides: "If judgment is rendered in favor

of the plaintiff, and no affidavit or answer, verified by oath, by the defendant is filed, denying the statements of the affidavit upon which the attachment was issued, or motion made to discharge it, the court shall sustain the attachment." Sand. & H. Dig., sec. 395. In the mere failure to file the controverting affidavit, the defendant commits no fraud upon his creditors. He has the right to prefer his creditors in this manner.

We answer the question propounded in the beginning of this opinion in the negative.

The bill of exceptions filed by appellants shows that evidence was adduced at the trial tending to prove, and that evidence was also adduced tending to disprove, the following statement: "That Rice, Stix & Co. and Bamberger, Bloom & Co., two of the interveners herein, were falsely informed by the First National Bank, after it had prepared its attachment, that C. Tilles & Co. were in solvent circumstances, and that it did not intend to press said C. Tilles & Co. for the debt due it, and that such representations were made in order to gain precedence of said interveners in the order of attachment; that said representations, if made, were false; that, by reason of said representations, said interveners granted C. Tilles & Co. extension upon their debts then due, which occurred after the bank attachment was prepared, and its attorneys were under instruction to file the suit and cause the attachment to issue." Upon this evidence, appellants asked the court to instruct the jury that, if this statement were true, the attachment by the bank was fraudulent as to the creditors misled by the representations. But the court refused to give the instruction, and this is assigned for error. The action of the court in this respect was correct. The bank was under no obligation to indicate to appellants what course it would pursue as to its debtor. It might not have been prudent, but, on the contrary, against its interest,

*When misrepresentation not fraudulent.*

to inform them. They had no right to rely upon its representations, and it was their own folly to have done so. *Bardwell* v. *Perry*, 19 Vt. 292, 302. The evidence clearly shows that, if they did, they were not injured thereby. They were then too far outstripped in the race of diligence to reasonably hope to overtake their competitor.

Judgment affirmed.