## RICE *v.* DORRIAN.

Opinion delivered April 22, 1893.

1. *Indorser on note not a " surety."*

An indorser of a note is not a surety, within Mansf. Dig., secs. 6396, 6397, authorizing a surety to sue his principal to obtain indemnity against the debt or liability for which he is bound before it is due, whenever any of the grounds exist upon which an order may be made for attachment.

2. *Attachment—Right of junior attacher to intervene.*

An attaching creditor, to protect his rights in the property attached, may intervene in a prior attachment suit to show that the prior order of attachment was issued without authority in law or in fact.

Appeal from Miller Circuit Court.

RUFUS D. HEARN, Judge.

*L. A. Byrne* for appellants.

1. An indorser is not a surety, and is not entitled to the remedy provided for a surety by secs. 6396–7, Mansf. Digest. See 31 Ark. 511; 53 *id.* 140; Rand. Com. Paper, vol. 2, secs. 896, 898; 54 Ark. 524; 24 *id.* 511.

2. Dorrian was not the owner of the notes, and could not sue out an attachment based on them. He afterwards amended, but his lien would only date from the amendment. 53 Ark. 144.

*J. D. Cook* for appellee.

A junior attaching creditor cannot dispute the grounds of attachment nor defeat the attachment for mere errors or irregularities in pleading or proceeding. 47 Ark. 31; Drake, Att. 2d ed. sec. 273. See also 18 Cal. 152; 12 Ohio St. 158; 49 Ala. 575; 34 Ark. 712. This case is reduced to this question alone: Did the plaintiff or appellee, C. C. Dorrian, have a case in the court upon which, after proper amendments, a valid judgment could be rendered; if so, then the judgment

rendered by the trial court dismissing appellant's intervention was proper. Appellant's counsel contends that 53 Ark. p. 140 is conclusive of this case. We confess to seeing nothing in that case changing the well established rights of interveners in the courts of Arkansas. In that case the court held that it required the ratification of Deere, Mansur & Co. to give the proceedings any legal force whatever, and for that reason the attachment was invalid until the acts of Wm. Reynold's attorney was ratified. Hardware Co. having had their attachment levied prior to this ratification, the court declared them entitled to the prior lien. There is no application to be made of that case to this. No intervening creditor can be heard to question the grounds of attachment, except for fraud or collision. 47 Ark. 31 ; 50 Ark. 444; 22 Fed. Rep. 61. The judgment of the lower court we submit was not error, and should be affirmed.

BATTLE, J. The facts which are necessary to state in order to understand the question presented by appellant's counsel for our consideration are as follows :

C. C. Dorrian was indorser on four promissory notes for $125 each. Two of them were dated February 14, 1891, and the other two bore date the 16th of March, 1891, and all of them were made payable sixty days after date. He was also indorser on three notes for $60 each, dated February 2, 1891, one of which was made payable 90 days, one four months, and the other five months, after date. J. J. McGrath was the maker of all of them. On the 8th of April, 1891, Dorrian commenced suit on these notes in the Miller circuit court, and sued out an order of attachment for the purpose of securing indemnity as indorser before the notes, or any of them, were due. Rice, Stix & Co. also brought an action against McGrath for $2,754.61 in the same court, and sued out an order of attachment. These orders were

levied on the same stock of goods, the first in the morning and the latter in the evening of the same day. Rice, Stix & Co., by complaint filed in the first suit, denied the validity of Dorrian's attachment on the ground he was not owner of the notes sued on, and as indorser was not entitled to sue out an order of attachment, and asked that their attachment be first satisfied. The circuit court sustained both attachments, and rendered judgments in favor of the respective plaintiffs in both actions for the amounts severally sued for, and dismissed the complaint of Rice, Stix & Co., filed by them as interveners in the first suit, and thereby gave the first attachment priority.

From the order sustaining the first attachment and dismissing their complaint, Rice, Stix & Co. prosecute this appeal.

The statutes authorize a surety to maintain an action against his principal to obtain indemnity against the debt or liability for which he is bound, before it is due, whenever any grounds for attachment exist, and in such actions to obtain orders of attachment. Mansfield's Digest, secs. 6396, 6397. The question for us to decide is, is an indorser a surety within the meaning of the statutes?

1. Indorser on note not a surety.

There is in some respects a resemblance between indorsers and sureties. The great difference exists in the contracts into which they enter when they assume the relations which give to them their respective names. The surety is an original promisor, and is usually bound with his principal by the same instrument, executed by him at the same time and for the same consideration. The contract of the indorser is a new and subsequent one. The contracts are different. The indorser contracts with the indorsee and every subsequent holder as follows : " (1) That the instrument and antecedent signatures are genuine ; (2) that he, the indorser, has a good title to the instrument ; (3) that he is competent to bind

himself in such a contract; (4) that the maker is competent to bind himself to the payment, and that he will, upon due presentment of the note, pay it at maturity; and (5) that if, when duly presented, it is not paid by the maker, he, the indorser, will, upon due and reasonable notice being given him of the dishonor, pay the same to the indorsee or other holder."

The obligations of the principal to the surety and indorser are different. To the indorser he assumes no obligation, except that contained in the original undertaking. As to that, when the liability of the indorser is fixed by demand and notice, he has the right to pay the amount due on the contract to the holder, and to be subrogated to all the rights of the latter as against the maker. As to the surety in the strict technical sense the principal's obligation is not the same. In the absence of an express contract, the law implies a promise of indemnity to him on the part of the principal. When the debt is due, the surety can pay it and maintain an action on this promise and recover the amount paid. He is not compelled, like the indorser, to bring his action on the original contract to obtain relief against the principal. His right to relief rests on the promise to indemnify, and he can only recover what he has paid, or the value of it, and interest. *Hill* v. *Wright*, 23 Ark. 530. Upon this promise of indemnity he can bring suit in a court of equity, after the debt has become due, to compel the principal to pay it, without paying it or being called upon by the creditor. As there is no promise of the principal to indemnify the indorser, he cannot be entitled to the relief based on such a promise. His duty, if he be liable, is to take up the original contract when it is dishonored, and his remedy is to sue upon it. *Ross* v. *Jones*, 22 Wall. 576; 1 Brandt on Surety, chapter 9.

In *Uptmoor* v. *Young, ante,* p. 528, this court held that sections 6396 and 6397 of Mansfield's Digest, upon

which the action of Dorrian is based, are merely declaratory of the surety's right to exoneration and create no new right, and that their sole object was to secure and enforce this right. This being true, it necessarily follows from what we have said that an indorser is not a surety within their meaning, and we so hold.

But did appellant have the right to contest the legality of the first attachment? The statutes of this State expressly provide that a junior attaching creditor may, by complaint verified by oath, dispute the validity of a senior attachment when both attachments are against the same defendant and are levied on the same property. Mansf. Digest, secs. 356, 358. When the junior attaching creditor files his complaint, it is said, an intervening suit is thereby instituted which is separate and distinct from the suits already instituted, and the issues therein are joined between the plaintiffs in the two attachment suits without regard to the common defendant. In the intervening suit he cannot take advantage of what may be properly regarded as informalities or irregularities in the proceedings in the first attachment, though constituting good grounds for objection on the part of defendant. *Sannoner* v. *Jacobson*, 47 Ark. 31. But why is he allowed to intervene? He has the right to dispute the validity of the first attachment, and it is the duty of the court to hear the proof and "make such orders as are necessary to protect his rights." In what way can he dispute the validity of the attachment? In some cases it has been held that he cannot defeat the first attachment on account of irregularities, but if he can show that the older attachment is based upon a fraudulent demand or one which has in fact no existence, he may attack the lien secured by it on that ground to protect his interest in the property." *Nenney* v. *Schluter*, 62 Texas, 327 ; *Johnson* v. *Heidenheimer*, 65 *id.* 253 ; *Smith* v. *Gettinger*, 3 Ga.

2. Right of junior attacher to intervene.

140; *Pierce* v. *Jackson*, 5 Mass. 244; Drake on Attachment (7th ed.), secs. 272–275*a*, and cases cited. In *Hardware Co.* v. *Deere, Mansur & Co.* 53 Ark. 140, it was held that the junior attaching creditor could show that the first order of attachment was sued out without the assent of the plaintiff in whose name it was issued, holding in that event it was not the action of the plaintiff, and could not take precedence of a subsequent attachment which was levied before the first was ratified by the proper parties. So we think it clear that a junior attacher can, for the purpose of protecting his rights in the property attached, dispute the validity of a prior attachment, and establish the right of his own to precedence, by showing that the first exists without authority or is not allowed by law. In the former case there was no authority in fact to bring it, and in the latter none in law to maintain it. *Hardware Co.* v. *Deere, Mansur & Co.* is an example of an attachment without authority in fact; and the attachment of Dorrian in this action, of one not allowed by law. Here Dorrian undertook to sue out an attachment to obtain indemnity, when in law or equity he was not entitled to any. It is manifest that his attachment is baseless, and cannot defeat the right of the appellants to payment out of the proceeds of the attached property before any of the seven notes which were sued on by Dorrian as before stated can be lawfully paid.

The judgment of the court below is therefore set aside, and this cause is remanded with instructions to enter judgment in accordance with this opinion, and for other proceedings.